## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JUSTYN KROWICKI, and
ALLISON BAUM,

                                        Plaintiffs,

            v.                                          6:16-CV-1186
                                                        (DNH/ATB)

TIMOTHY SAYEMOUR,[1] Comm'r
of DSS/CPS, et al.,

                                        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JUSTYN KROWICKI, Plaintiff pro se
ALLISON BAUM, Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

### ORDER and REPORT-RECOMMENDATION

        The Clerk has sent to the court a complaint, filed on a form for civil rights

actions pursuant to 42 U.S.C. § 1983, together with an application to proceed in forma

pauperis ("IFP"), filed by pro se plaintiffs Justyn Krowicki and Allison Baum. (Dkt.

Nos. 1-3).

## I.    IFP Application

        Plaintiffs appear to be a couple.[2]  Each plaintiff has completed his or her own

form because they are separate plaintiffs for this action.[3]  A review of the IFP

-----

        [1] Plaintiffs have named "Timothy Sayemour" as the Commissioner of the Herkimer Department of Social Services.  This individual's name is actually "Timothy Seymour," and the court will use the proper spelling of his name in the body of this Report-Recommendation.

        [2] Plaintiffs live at the same address.  However, it is unclear whether they are married.  Their marital status does not affect any of the findings in this Order and Report-Recommendation.

        [3] It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself or herself. *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654.  An limited exception exists if an individual appears for an estate in which there

applications shows that the plaintiffs are not able to afford to pay the filing fee. Thus, the court will assume for purposes of this Order and Report-Recommendation that, together, and separately, plaintiffs meet the financial criteria for IFP.

In addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when

---

are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case.

plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555).  The court will now turn to a consideration of the plaintiffs' complaint under the above standards.

## II.   **Complaint**

The plaintiffs' complaint is disjointed and vague, but the court will attempt to interpret it as liberally as possible to determine whether the complaint states any claims for relief.[4] *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (pro se papers are interpreted liberally to raise the strongest arguments suggested therein).  Plaintiffs allege that on November 20, 2015, their Fourth and Fourteenth Amendment rights were violated when an "out of county CPS"[5] came to the hospital, without a warrant, six hours after their son was born, and asked plaintiffs to "sign [their] rights to County with honestly no reason." (Complaint ("Compl.") ¶ 4) (Dkt. No. 1).

Plaintiffs state that they said "no," so the hospital "placed [their] son on hold," and plaintiffs could not take him out of the hospital. (*Id.*)  On November 23, 2015, the

---

[4] This is made more difficult because most of plaintiffs' sentences run together, and it is unclear who the writer of the complaint is.  Sometimes it appears that Allison is writing, while other times it appears that Justyn could be the author of the complaint.

[5] The court assumes that plaintiffs are referring to Child Protective Services ("CPS").

"HCDSS"[6] filed for "Immediate Removal" of plaintiffs' son.  Plaintiffs state that "while still in the hospital," one of them got a telephone call, informing the couple that they had to be in court in forty-five minutes in Herkimer, while they were still in Cooperstown.  One of their stepfathers "rushed up there," but plaintiffs state that they were not properly served for the court date, and claim that this was "illegal." (*Id.*)  Then plaintiffs state that they had a court date on November 24, 2015, and their child was placed in foster care overnight. (*Id.*)

Plaintiffs then state that on November 25, 2015, "they" tried to say that Allison did not have custody of her oldest son, but plaintiffs have "joint custody" with the son's father, although he has "physical custody."  Plaintiffs claim that "they" tried to "use that" as their "basis," but then kept "changing their reasons for taking the child.[7] Plaintiffs also state that "they" would not have known anything "if they didn't break HIPPA [sic]."[8]

In their "Causes of Action," plaintiffs allege that HCDSS and CPS "medically kidnapped" their son "under false allegations." (Compl. ¶ 5).  "They" violated HIPAA and falsified information about a "sealed file," discriminating against plaintiffs because they were "bipolar," a condition for which they had always been treated.  Plaintiffs

---

[6] The court assumes that plaintiffs are referring to Herkimer County Department of Social Services ("HCDSS").

[7] In liberally interpreting the complaint, the court reads these sentences as alleging that, either the caseworkers or the court used plaintiff Baum's alleged loss of custody of her older son as the "basis" for removal of the new baby, but that the basis for removal "kept changing."

[8] The court assumes that plaintiffs are referring to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6.

claim that the "psychiatric" doctor wrote a note "for our worker and nurses," stating that the child could go home with them, but the note was not "there." Plaintiffs also state that CPS did not have a warrant, and that an "out of county CPS" came to the hospital because "Herkimer didn't want to." Finally, plaintiffs allege that Justyn is now "dealing with hypertension" due to "those events," and that plaintiffs wish to raise a claim of "emotional distress." (*Id.*) Plaintiffs ask that defendants "pay for these damages and mistakes," and that their child "gets returned . . . to us safely." (*Id.*)

## III.  **Respondeat Superior/Personal Involvement**

### A.  **Legal Standards**

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or

event.  *Id.  See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*.  *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases).  However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*.  *Id.*  In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'"  *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)).  *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

## B.    Application

Plaintiffs have sued Timothy Seymour, the Commissioner of the Herkimer Department of Social Services; Jackie Asnoe;[9] Collette Fredricks, CPS Worker; and Kathy Lyndecker, Case Worker. (Compl. at 1).  None of the defendants are mentioned by name anywhere in the body of the complaint, and it is unclear what part each

---

[9] Plaintiffs do not list an "official position" for Ms. Asnoe.  On the complaint, her address is listed as the same as Commissioner Seymour's address.  An internet search indicates that Ms. Asnoe may be an attorney.

defendant played in the conduct alleged by the plaintiffs. Plaintiffs must be specific in their allegations against defendants in a civil rights action. Conclusory allegations are insufficient to state a claim under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

In addition, Timothy Seymour is the Commissioner of the HCDSS, and it is also unclear what personal involvement he would have had in plaintiffs' case. As stated above, in order for a supervisory official to be "personally involved" in an alleged constitutional violation, that individual would have to have actually "participated" in the alleged infraction, would have to have failed to remedy the situation after having become aware of the constitutional violation through a report or appeal, or would have to have created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or would have to have been grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams*, *supra*.

Plaintiffs have not alleged the personal involvement of Commissioner Seymour or any of the other defendants.[10] To the extent that plaintiffs seek damages against any

---

[10] To the extent that plaintiffs wish to sue Commissioner Seymour in his "official capacity," they would be suing Herkimer County. A section 1983 action against municipal officers in their official capacities is treated as an action against the municipality itself. *Coon v. Town of Springfield*, 404 F.3d 683, 687 (2d Cir. 2005) (citing *Brandon v. Holt*, 469 U.S. 464, 471-73 (1985)). The municipality itself may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Id.* at 694. To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). In this case, plaintiffs have not asserted any of the bases for municipal liability, and the

of the defendants, this case must be dismissed.  The complaint may also be dismissed for alternative reasons, discussed below.

## IV.  **HIPAA**

### A.  **Legal Standards**

"Courts have overwhelmingly concluded that there is no private right of action under HIPAA." *Coon v. Burkly*, No. 1:13-CV-1306, 2014 WL 1976669, at *8 (N.D.N.Y. May 15, 2014) (citing *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n. 4 (10th Cir. 2010); *Miller v. Nichols*, 586 F.3d 53, 59 (1st Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 572 (5th Cir. 2006); *Rosado v. Herard*, No. 12 Civ. 8943(PGG) (FM), 2013 WL 6170631, at *3, 2013 (S.D.N.Y. Nov. 25, 2013), *report and rec. adopted in part and modified in part on other grounds*, 2014 WL 1303513 (S.D.N.Y. Mar. 24, 2014); *Mascetti v. Zozulin*, No. 3:09 Civ. 963(PCD), 2010 WL 1644572, at *4 (D. Conn. Apr. 20, 2010); *Cassidy v. Nicolo*, No. 03 Civ. 6603(CJS), 2005 WL 3334523, at *5 (W.D.N.Y. Dec. 7, 2005) (collecting cases)).  Enforcement of HIPAA is reserved exclusively to the Secretary of Heath and Human Services. *Rzayeva v. United States*, 492 F. Supp. 2d 60, 83 (D. Conn. 2007).

### B.  **Application**

Plaintiff alleges that the defendants "broke" HIPAA.  However, it is clear that plaintiff may not bring an action based upon alleged HIPAA violations, regardless of who, or what entity, plaintiff names.  Any claims based upon HIPAA may be dismissed with prejudice.

---

complaint may be dismissed as against Commissioner Seymour in his official capacity.

## V.    Rooker-Feldman

### A.    Legal Standards

A challenge under the *Rooker Feldman* doctrine is for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *Remy v. New York State Dep't of Taxation and Finance*, 507 F. App'x 16, 18 (2d Cir. 2013). *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).  This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The doctrine also bars the federal court from considering claims, whether or not raised in state court, that assert injury based on a state judgment and seek review and reversal of that judgment.  *Hensel v. City of Utica*, 6:15-CV-374 (LEK/TWD), 2016 WL 1069673, at *4 (N.D.N.Y. March 16, 2016) (citing *Hoblock v. Albany Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)).  Such claims are "inextricably intertwined" with the prior state court determination.  *Id.*

As applied in this circuit, four prerequisites must be met for the *Rooker Feldman* doctrine to apply: (1) the federal court plaintiff lost in state court; (2) plaintiff complains of injuries flowing from the state court judgment; (3) the action invites the district court to review and reject the state court judgment; and (4) the state court judgment was rendered prior to commencement of the federal court proceedings. *Hoblock*, 422 F.3d at 85.

## B.     Application

The application of *Rooker Feldman* can be a complicated issue because the question of whether a plaintiff is complaining of injuries "flowing" from the state court judgment may be difficult to determine.  In addition, it must be clear that the plaintiff lost in state court. *See Green v. Mattingly*, 585 F.3d 97, 102-103 (2d Cir. 2009) In *Green*, the Second Circuit reversed the district court's application of *Rooker Feldman* when the state court did not enter a final order, permanently removing the plaintiff's child from her custody, declining to find that plaintiff "lost" in state court.  However, the court in *Green* held that "the situation would have been different if the Family Court had entered a final order of disposition, . . . and plaintiff had brought this action seeking the return of her child." *Id.* at 103.  *See also Schweitzer v. Crofton*, 935 F. Supp. 2d 527, 540-44 (E.D.N.Y. 2013) (discussing the difference between challenging a final order issued by the state court and a situation in which the plaintiff is challenging procedures utilized prior to the state court order and does not "invite district court review and rejection of a state court judgment").

In this case, plaintiffs potentially allege due process violations from before the state court judgment and as a result of the judgment.[11]  Although plaintiffs do appear to

---

[11] If the state court action were still pending, this court would also consider whether it lacked jurisdiction under the abstention doctrine pursuant to *Younger v. Harris*, 401 U.S. 37, 43-45 (1971). Pursuant to *Younger*, the District Court is without jurisdiction under the abstention doctrine if there is an ongoing state proceeding; where an important state interest is implicated; and the plaintiff has an avenue open for review of constitutional claims in state court. *See Parent v. New York*, 485 F. App'x 500, 503 (2d Cir. 2012) (quoting *Younger, supra*; *Liberty Mut. Ins. Co. v. Hurlbut*, 585 F.3d 639, 647 (2d Cir. 1997)).  The *Younger* doctrine originally applied only to criminal proceedings, but is now applicable to civil actions as well, including state administrative proceedings. *Id.* (citations omitted). The doctrine also applies to claims for declaratory and injunctive relief. *Id.*  In this case, if the state

seek the return of their child in addition to damages, indicating that they are attempting to overturn the court's judgment, the outcome of the state court action is unclear, and thus, I will not recommend dismissal based on *Rooker Feldman* at this time.[12] *See also P.A. v. City of New York*, 44 F. Supp. 3d 287, 297-98 (E.D.N.Y. 2014) (declining to apply *Rooker Feldman* where family court proceedings never reached a final outcome that would be appealable in state court).

## VII.  Due Process

### A.    Legal Standards

Parents' interest in the custody of their child is a constitutionally protected liberty interest, subject to due process protection. *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 103-104 (2d Cir. 1999) (citing inter alia *Cecere v. City of New York*, 967 F.2d 826, 829 (2d Cir. 1992)); *Schweitzer*, 935 F. Supp. 2d at 545-46.  As a general rule, before parents may be deprived of the care, custody, or management of their children without their consent, due process ordinarily requires a court proceeding resulting in an order permitting removal. *Schweitzer*, 935 F. Supp. 2d at 545 (quoting *Southerland v.*

---

court action were still pending, the above factors would dictate that the court abstain from consideration of plaintiff's issues.  There is no indication that plaintiffs do not have an avenue for consideration of their custody issues in state court.

[12] If plaintiffs are able to amend their complaint to allege more specific facts against the individual defendants, the court might be able to discern whether they are challenging only the final decision of the state court — if one exists — or whether they are alleging only due process violations that occurred when the baby was first taken from them into temporary custody.  As the complaint is written, plaintiffs seem to be challenging the state court's decision or the perhaps the arguments made by the CPS workers at the court appearance.  Plaintiffs allege that some of the statements they made were false, and that "they" kept changing the reason for taking the child in addition to the "illegal seizure" and "medical kidnapping" of the baby.

*City of New York*, 680 F.3d 127, 142 (2d Cir. 2012) (quoting *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003), *reh'g en banc denied*, 681 F.3d 122 (2012), *cert. denied*, 569 U.S. __, 133 S. Ct. 980 (2013)).

In emergency situations, the child may be taken into custody "'by a responsible state official without court authorization or parental consent.'" *Id.* (citations omitted). Standards exist which must be followed in determining whether "emergency circumstances" existed at the time of removal. *Id.* at 546 (the government must offer objectively reasonable evidence that harm to the child was imminent); N.Y. Fam. Ct. Act § 1024(a) (defining emergency circumstances). Procedural due process protects the procedure by which a removal is effected, while a substantive due process claim challenges the "fact" of the removal. *Id.* at 548-49 (discussing substantive due process).

## B.    Application

Plaintiffs allege that their due process rights were violated when their son was taken from them, but it is unclear what the due process violation was, and which defendant was responsible. Plaintiffs must identify which defendant was responsible for the alleged due process violation, and plaintiffs must identify the due process violation that they are attempting to raise. If they are able to do so, the plaintiffs could conceivably state a claim, although they have not done so based on the facts that they have stated in the existing complaint.

Plaintiffs concede that they were afforded a hearing on the custody issue. They claim that there was no warrant to seize their son, but no indication of which defendant might have been responsible for the seizure. Plaintiffs also allege that "out-of-county"

12

CPS came to the hospital.  Such conduct was logical because plaintiffs state that they were in a Cooperstown hospital.  Cooperstown is in Otsego County, while plaintiffs reside in Herkimer County.  Thus, if plaintiffs choose to amend their complaint, they must specify the conduct they believe rose to the level of a due process violation.

## VIII.  Unlawful Seizure

### A.    Legal Standards

When a child is taken into custody, "his or her person" is seized for Fourth Amendment purposes. *Schweitzer*, 935 F. Supp. 2d at 550 (citing inter alia *Southerland*, 680 F.3d at 143).  Even a temporary removal may constitute a "seizure" for purposes of the Fourth Amendment. *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 366 (S.D.N.Y. 2010).  However, the child must assert the claim for the unlawful seizure. *Id.* Parents do not have Fourth Amendment rights as to the child's removal, and may bring claims only on their child's behalf. *Id.* (citing *Tenenbaum v. Williams*, 193 F.3d 561, 601 n.13 (2d Cir. 1999)).

### B.    Application

The plaintiffs' child is not a plaintiff in this action.  Additionally, the plaintiffs are pro se and may not represent the interests of their son, whatever those interests are. As stated above, a person who has not been admitted to practice law may not represent anyone other than himself. *Lattanzio v. COMTA*, 481 F.3d at 139-40; 28 U.S.C. § 1654. Thus, pro se plaintiffs may not represent their minor child. *Armatas v. Maroulleti*, 484 F. App'x 576, 577 (2d Cir. 2012); *Tindall v. Poultney High School Dist.*, 414 F.3d 281, 284 (2d Cir. 2005).  The court will proceed to consider the complaint as it applies only

to plaintiffs' own claims. Any claims based on the Fourth Amendment may be dismissed with prejudice unless plaintiffs obtain counsel for themselves,[13] and/or their son.

## IX.    **Americans with Disabilities Act ("ADA")/Rehabilitation Act ("RA")**

### A.    **Legal Standards**

Under Title II of the ADA, the plaintiffs must establish that they (1) are qualified individuals with a disability(ies); (2) the defendant is subject to the ADA; and (3) plaintiffs were denied the opportunity to either participate in, or to benefit from the defendants' services, programs, or activities or were otherwise discriminated against because of plaintiffs' disabilities. *United Spinal Ass'n v. Bd. of Elections in City of New York*, 882 F. Supp. 2d 615, 623 (S.D.N.Y. 2012) (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003)). In order to state a claim under section 504 of the Rehabilitation Act, the plaintiffs must show that they (1) have a disability for purposes of the Act; (2) that they were "otherwise qualified" for a benefit that they were denied; (3) that they were denied the benefit solely because of their disabilities; and (4) that the benefit is part of a program or activity that receives federal financial assistance. *Romano v. SLS Residential, Inc*. 246 F.R.D. 432, 440 (S.D.N.Y. 2007).

### B.    **Application**

In this case, plaintiffs state that they were subject to discrimination because "they" are bipolar, and that a doctor wrote a note that should be in their "file," stating that the baby could come home with them. Once again, plaintiffs claim is conclusory.

---

[13] Plaintiffs may continue to appear pro se on their own behalf.

Consideration of a mental disability "standing alone," is not a violation of the ADA or the RA in the context of child custody. *Schweitzer*, 935 F. Supp. 2d at 553 (citing *Ward v. Murphy*, 330 F. Supp. 2d 83, 98-99 (D. Conn. 2004) (holding that consideration of a parent's mental disability in determining whether child should remain in his house was not a violation of the ADA). Without more, plaintiffs have not stated that the decision to remove the baby was "impermissibly based" on the couple's disability. Plaintiffs, therefore, do not state a claim under the ADA or RA.[14]

## X.   <u>Opportunity to Amend</u>

### A.   **Legal Standards**

Generally, before the court dismisses a pro se complaint or any part of the complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.   **Application**

In this case, plaintiffs have failed to state a claim, primarily because they have failed to allege any wrong doing by the individual defendants, and they have set forth only conclusory facts that do not properly state due process or any other constitutional

---

[14] The court must note that plaintiffs did not raise such a claim, but the court has interpreted plaintiffs' complaint to raise the strongest arguments it suggests, and the ADA and RA have been utilized in this context in other court actions. *See Schweitzer, supra.*

claims.  However, the court finds that plaintiffs should be given an opportunity to amend their complaint in an attempt to cure the deficiencies discussed above.[15]  Thus, if the court approves this Recommendation, plaintiffs should be given forty-five (45) days from the date of the district court's order within which to file a proposed amended complaint for the court's review.

If plaintiffs file an amended complaint, the court may return it to me for substantive review.  If plaintiffs fail to file a proposed amended complaint within the assigned time or fail to ask for an extension of time to do so, this court then recommends dismissal of the entire action with prejudice.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' applications to proceed IFP (Dkt. Nos. 2, 3) are **GRANTED FOR PURPOSES OF FILING**, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITH PREJUDICE** as to any HIPAA claims and as to any Fourth Amendment claims brought by the current plaintiffs, and it is

**RECOMMENDED**, that the remainder of the complaint be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii), and it is

**RECOMMENDED**, that if the District Court approves this recommendation, the

---

[15] This does not apply to the HIPAA claim because there is no amendment which will allow plaintiffs to bring a cause of action based upon HIPPA.  This also does not apply to the Fourth Amendment claim because such a claim is personal to plaintiffs' child, who cannot appear without counsel.

16

court afford plaintiffs forty-five (45) days from the date of its order within which to file a proposed amended complaint for the court's review or ask for a reasonable extension of time to do so, and it is

**RECOMMENDED**, that if plaintiffs fail to file a proposed amended complaint by the assigned date or by any date extended by the court, the case be **DISMISSED WITH PREJUDICE**, and it is

**RECOMMENDED**, that if plaintiffs file a proposed amended complaint, the court send it back to me for my review, and it is

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiffs.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: October 5, 2016

Hon. Andrew T. Baxter
U.S. Magistrate Judge

17