UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JUSTYN KROWICKI, and
ALLISON BAUM,[1]

                             Plaintiffs,

       v.                                                   6:16-CV-1186
                                                                 (DNH/ATB)

TIMOTHY SAYEMOUR,[2] Comm'r
of DSS/CPS, et al.,

                             Defendants.
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

JUSTYN KROWICKI, Plaintiff pro se
ALLISON KROWICKI, Plaintiff, pro se

ANDREW T. BAXTER, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

Plaintiffs filed their complaint on September 30, 2016, together with applications to proceed in forma pauperis ("IFP"). (Dkt. Nos. 1, 2). On October 5, 2016, I issued an Order and Report-Recommendation, finding that the plaintiffs met the financial criteria for IFP status, but recommending dismissal on the merits, without prejudice to filing an amended complaint. (Dkt. No. 6). Plaintiffs were told that they could object to the Order and Report-Recommendation. However, rather than filing objections, plaintiffs filed an amended complaint ("AC") on November 14, 2016. (Dkt. No. 7). On June 13, 2017, plaintiffs filed a letter requesting the status of their action, requesting the addition

---

[1] Plaintiffs have filed a letter indicating that they were married, and thus, both of their last names are Krowicki. (Dkt. No. 8). I will order that the Clerk change the caption of the complaint to reflect the change.

[2] Plaintiffs' original complaint named "Timothy Sayemour" as the Commissioner of the Herkimer Department of Social Services. This individual's name is actually "Timothy Seymour." Plaintiffs have continued to misspell the defendant's name in their amended complaint. However, the court will use the proper spelling of his name in the body of this Report-Recommendation.

of a new defendant, and informing the court of their marriage. (Dkt. No. 8).  Because of plaintiffs' marriage, the court will refer to them as Allison Krowicki ("AK") and Justyn Krowicki ("JK").  On June 28, 2017, the Honorable David N. Hurd adopted my Order and Report-Recommendation and sent the AC back to me for further review. (Dkt. No. 9).

I.      **Review of Amended Complaint**

   A.     **Legal Standards**

In addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed.

*Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiffs' AC under the above standards.

**B.   Application**

With some minor changes, the AC is identical to the original complaint. Plaintiffs allege that six hours after the birth of their son, while plaintiff AK was still in the hospital, Child Protective Services ("CPS") was "called" and "showed up" at the hospital "without a warrant" to "remove" the child. AC at 4).[3] Plaintiffs were asked to "sign [their] rights [over] to Herkimer County Department of Social Services," but plaintiffs state that they refused to do so. (*Id.*) Plaintiffs claim that because CPS did not have a warrant, the seizure of the baby was illegal.

Plaintiffs state that they "asked what the report said," and they appear to quote language from an unidentified "report" in the AC. The "report" stated that AK was diagnosed with Postpartum Depression and Bipolar Disorder, and she no longer had

---

[3] Plaintiffs have not numbered the pages of the AC. The court will cite to the page numbers as assigned by the court's electronic filing system ("CM/ECF').

3

custody of her 20-month-old child, due to mental health issues. (*Id.*) The report further stated that AK was "still mentally unstable and refused to take medication," and was "incapable of providing for her infant son," to whom she had just given birth. (*Id.*) The report also stated that the father was unknown and had an unknown role. Plaintiffs state that they have a copy of this report.

AK states that she does not have Bipolar symptoms any more, and it "does not show anymore."[4] AK states that she was never diagnosed with Postpartum Depression. Plaintiff states that this is a false allegation, and that she cannot take medication without purpose. She also states that she has joint custody of her first son, and his father has "physical custody." AK appears to state that a physician examined the baby and stated in writing that the baby was "ok" to go home with plaintiffs, but that CPS told AK that this statement was "missing," so it did not "count." (AC at 5).

Plaintiff's were told to call defendant Collette Fredericks, who was their CPS worker from the Herkimer County Department of Social Services ("HCDSS"). (*Id.*) Plaintiffs called defendant Fredericks and asked her why she lied in the report and why she was destroying their family. Defendant Fredericks allegedly stated: "Because I can," and then she hung up on plaintiffs. Plaintiffs state that the Cooperstown Hospital, where AK had given birth placed their baby "on hold." (*Id.*) On "November 23rd,"[5]

---

[4] It appears that plaintiffs have taken the original complaint and edited it by adding words or phrases above the original lines of the complaint. Plaintiff originally stated that "I do have bipolar but does not show anymore." The AC states that "I do not have bipolar symptoms any more but does not show anymore."

[5] The court assumes that plaintiffs are referring to November 23, 2015 because plaintiffs refer to a court date on November 25, 2015 later in the AC. (AC at 6).

4

HCDSS filed for an "Immediate Removal" of the baby. While AK was still in the hospital, on November 24, 2015, the plaintiffs received a telephone call, informing them that they had to be in court "in Forty Five Minutes," so AK's step father rushed to the hospital to pick up the plaintiffs so they could get to court. Plaintiffs stated that Family Court Judge John Brennan[6] placed the child in foster care "until they could find a family member who was suitable." (AC at 6).

Plaintiffs allege that "defendant Fredericks's attorney"[7] was John Crandell, who according to plaintiffs, had a "conflict of interest," because Mr. Crandell was plaintiff JK's attorney when his "file was sealed in 2010." Plaintiffs claim that CPS was trying to use JK's sealed file against them "which is illegal." (*Id.*) Plaintiffs were given another court date for November 25, 2015, and plaintiffs' son was placed with plaintiff JK's mother. Plaintiffs were assigned a social worker - defendant Kathy Lyndecker, who was "suppose[d] to send our referrals to places so we can do the services requested, but refuses." (*Id.*) Plaintiffs claim that defendant Lyndecker has also lied to the judge on "numerous occasions." AK claims that defendant Lyndecker was very unprofessional when she allegedly told AK, that if she put JK in jail, she would get the baby back. Plaintiffs requested a different case worker, but they could not get one.

When plaintiffs went back to court on December 17, 2015, HCDSS had a new attorney - defendant Jacquelyn Asnoe, who was also HCDSS's attorney when plaintiff

---

[6] Plaintiffs spelled this defendant's name "Brennon," however, the court has determined that this defendant's proper name is Judge John Brennan, and will refer to him with the proper spelling of his name.

[7] Defendant Frederick's "attorney" would be the HCDSS attorney.

AK had her first child. (AC at 7). Plaintiffs claim that this is also a conflict of interest. Plaintiffs were "given a neglect charge without finding March 31, 2016." (*Id.*) Plaintiffs state that they had "many court appearances since" that time, but have not gotten "any further."

Plaintiffs say that they are seeking to get custody of their child and money damages for the time that they have lost with their son. (*Id.*) Plaintiffs also claim that JK has developed hypertension as a result of the custody proceeding, and they would like to sue the defendants for "emotional distress." (*Id.*) On June 13, 2017, plaintiffs filed a letter stating that they had a new case worker, Denise Brown, who had "closed the previous case," and they would like to add Ms. Brown as a defendant. (Dkt. No. 8). Plaintiffs attached a letter from Ms. Brown, dated August 7, 2015, stating that HCDSS was closing "your case to Preventive Services" as of August 7, 2015 and informing AK of the procedure for appealing the decision. (Dkt. No. 8 at 2).

### III. Respondeat Superior/Personal Involvement

#### A. Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

A supervisory official is personally involved if that official directly participated

in the infraction. *Id.* The defendant may have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id.* Personal involvement may also exist if the official created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id.* Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id. See also Iqbal v. Hasty*, 490 F.3d 143, 152–53 (2d Cir. 2007) (citing *Colon v. Coughlin*, 58 F.3d 865, 873) (2d Cir. 1995)), *rev'd on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Some courts have discussed whether all of the *Colon* factors are still viable after *Ashcroft*. *See Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 439 (E.D.N.Y. 2012) (discussing cases). However, the court in *Conklin* ultimately determined that it was unclear whether *Colon* had been overruled or limited, and continued to apply the factors outlined in *Colon*. *Id.* In making this determination, the court in *Conklin* stated that "it remains the case that 'there is no controversy that allegations that do not satisfy any of the *Colon* prongs are insufficient to state a claim against a defendant-supervisor.'" *Id*. (quoting *Aguilar v. Immigration Customs Enforcement Div. of the U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 803, 815 (S.D.N.Y. 2011)). *See also Jones v. Smith*, No. 09-CV-1058, 2015 WL 5750136, at *8 n.6 (N.D.N.Y. Sept. 30, 2015) (discussing the use of the *Colon* factors absent definitive guidance from the Second Circuit).

### B. Application

Plaintiffs have continued to list Timothy Seymour as a defendant. Mr. Seymour is the Commissioner of HCDSS. Plaintiffs original complaint cited no personal involvement of Commissioner Seymour in their case. The AC does not cure any of the defects of the original in this regard. In fact, it is clear from the statement of facts that Commissioner Seymour was not involved in the plaintiffs' case. He is not even mentioned in the body of the complaint. Plaintiffs only claims against him would be in the nature of respondeat superior, which as stated above, is not a proper basis for liability in a section 1983 action. Thus, I will recommend dismissal of the AC with prejudice as to Commissioner Seymour.

## IV. Prosecutorial Immunity

### A. Legal Standards

Prosecutors enjoy absolute immunity from suit under section 1983 in matters associated with their prosecutorial functions, regardless of motivation. *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) (prosecutorial immunity covers virtually all acts associated with the prosecutor's function, including conspiracies to present false evidence); *Bernard v. County of Suffolk*, 356 F.3d 495 (2d Cir. 2004) (absolute immunity shields prosecutors from suit pursuant to section 1983 for their alleged malicious or selective prosecution as well as for any misconduct in the presentation of evidence to the grand jury).

Absolute immunity is defeated only when the prosecutor is engaging in investigative functions. *Bernard v. County of Suffolk*, 356 F.3d at 502-503 (citation

omitted). The initiation and pursuit of prosecution, regardless of any alleged illegality, is protected by absolute prosecutorial immunity. *Peay v. Ajello*, 470 F.3d 65, 67-68 (2d Cir. 2006). It has also been held that a prosecutor is entitled to absolute immunity for his or her decision not to prosecute, regardless of the motivation for that decision. *Schloss v. Bouse*, 876 F.2d 287, 292 (2d Cir. 1989).

County Attorneys who initiate and prosecute child protective orders or litigate family court petitions are entitled to the same absolute immunity that is afforded to prosecutors who bring criminal actions. *Hargis v. Werner*, No. 7:16-CV-343, 2017 WL 1082451, at *3 (N.D.N.Y. Mar. 22, 2017) (citing inter alia *Cornejo v. Bell*, 592 F.3d 121, 127-28 (2d Cir. 2010); *Walden v. Wishengrad*, 745 F.2d 149, 152 (2d Cir. 1984); *Roach v. Clark*, No. 15-CV-408, 2015 WL 4067504, at *7 (N.D.N.Y. July 2, 2015)).

**B.   Application**

Plaintiffs have named Jacquelyn Asnoe,[8] who was represented HCDSS in court at their hearings. (AC at 7). Plaintiffs make no specific claims against Attorney Asnoe, but state that she had a "conflict of interest" because she also represented HCDSS when plaintiff appeared regarding her first child. (*Id.*) Regardless of whether Attorney Asnoe had a conflict of interest,[9] any actions taken by her were in conjunction with the

---

[8] The court notes that plaintiffs also mention John Crandall, another HCDSS attorney in their AC. (AC at 6). Plaintiffs also state that Attorney Crandall had a conflict of interest because he represented JK in the previous criminal action that was "sealed." Although Attorney Crandall's representation of HCDSS in those circumstances could have been considered a "conflict," plaintiffs do not name Attorney Crandall as a defendant because he was substituted at their next court appearance by Attorney Asnoe.

[9] This court makes no such finding. Plaintiffs do not explain why they assert that defendant Asnoe had a conflict of interest. The fact that Attorney Asnoe represented the same agency against AK in a case relating to her first child is not a "conflict of interest." *See e.g.* N.Y. Pub. Off. Law § 74

9

HCDSS case against the plaintiffs. Plaintiffs make no other claims against this defendant. Thus, the AC may be dismissed with prejudice as against defendant Asnoe based on absolute immunity. *See also Treistman v. Wacks*, No. 1:12-CV-1897, 2017 WL 639322, at *6 (N.D.N.Y. Feb. 16, 2017) (dismissing action against DSS attorneys when plaintiffs' allegations involved only conduct in-court, related to the neglect proceeding).

## V.  Case Workers

### A.  Legal Standards

Parents have "a constitutionally protected liberty interest in the care, custody, and management of their children." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (collecting cases). "'As a general rule . . . before parents may be deprived of the care, custody, or management of their children without their consent, due process - ordinarily a court proceeding resulting in an order permitting removal - must be accorded to them." *Schweitzer v. Crofton*, 580 F. App'x 6, 10 (2d Cir. 2014) (quoting *Southerland v. City of New York*, 680 F.3d 127, 149 (2d Cir.2012) (internal quotation marks omitted)).

The due process rights available to the plaintiffs in child custody matters have been analyzed under both procedural and substantive protections. *Trombley v. O'Neill*, 929 F. Supp. 2d 81, 95-96 (N.D.N.Y. 2013). Both parents and children may have a cause of action for procedural due process violations. *Id.* Except in emergency circumstances, judicial process must be provided before removal of the child from his

---

(Code of Ethics). The court would point out that the defendant would be protected by absolute immunity in any event for her prosecution of the plaintiffs' case.

or her parent's custody. *Southerland*, 680 F.3d at 142 (citing *Kia P. v. McIntyre*, 235 F.3d 749, 759–60 (2d Cir. 2000). In emergency circumstances, "'a child may be taken into custody by a responsible State official without court authorization or parental consent.'" *Id.* (internal quotation marks omitted). In such an emergency, the government must produce objectively reasonable evidence that harm was imminent. *Id.*

Parents may also have a substantive due process claim relating to the removal of a child from their custody. *Trombley*, 929 F. Supp. 2d at 95. "'Parents have a substantive right under the Due Process Clause to remain together with their children without the coercive interference of the awesome power of the state.'" *Id.* (quoting *Southerland*, 680 F.3d at 142). This right must be balanced by the "compelling governmental interest in the protection of minor children, particularly in circumstances where the protection is considered necessary as against the parents themselves." *Id.* at 95-96 (quoting *McCaul v. Ardsley Union Free Sch. Dist.*, No. 12-CV-2300, 2013 WL 673751, at *1 (2d Cir. Feb. 26, 2013)).

The parents' substantive due process claim will be viable only if the removal of the child would have been prohibited by the Constitution even if the parents had been given all the procedural protections to which they were entitled. *Southerland*, 680 F.3d at 142 (citation omitted). Thus, procedural due process claims challenge the procedure by which a removal is effected, and substantive due process claims challenge the fact of the removal itself. *Id.* (citing *Bruker v. City of New York*, 92 F. Supp. 2d 257, 266–67 (S.D.N.Y.2000)). [10]

---

[10] Although the Fourth Amendment may be implicated in the seizure of a child, that right belongs only to the child and not to the parents. *Trombly v. O'Neill*, 929 F. Supp. 2d at 94 (citing

**B.     Application**

Plaintiff's AC names Collette Fredericks and Kathy Lyndecker as defendants. These women are two case workers, who have worked on the plaintiffs' case. Plaintiffs have requested to add Denise Brown, another case worker who took over plaintiffs' case after the court's custody determination, and who was apparently involved in a prior HCDSS case involving AK, and who allegedly "got into Justyn's sealed file." It does not appear that Ms. Brown had any personal involvement in the initial removal of the child. Plaintiffs' letter states that Ms. Brown is "a new case worker." (Dkt. No. 8 at 1). Thus, Ms. Brown has had no personal involvement in the issues of which plaintiffs now complain. Adding Ms. Brown as a defendant would be futile as plaintiffs have not stated a claim against her.[11] I will, thus, deny plaintiff's letter-motion to add Ms.

---

*Southerland*, 680 F.3d at 143). The child is not a plaintiff in this case, nor could he be because plaintiffs are non-attorney pro se parties who may only represent themselves and may not bring claims on behalf of others. Thus, although plaintiff's mention illegal "seizure" in the AC, such a claim is not available to the parents themselves.

[11] Generally, amendments to a complaint are liberally allowed. Fed. R. Civ. P. 15(a)(2) (amendments freely granted). The Second Circuit has stated that "[t]his permissive standard is consistent with our strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F. 3d 208, 212-13 (2d Cir. 2011) (internal quotation marks omitted). Leave to amend should be given "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 283 (2d Cir. 2000); *see also Couloute v. Ryncarz*, No. 11-CV-5986, 2012 WL 541089, at *3 (S.D.N.Y. Feb. 17, 2012) (quoting *Monahan*, 214 F.3d at 283). However, motions to amend "should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 126 (2d Cir. 2008); *Monahan*, 214 F.3d at 283. An amendment is futile if the proposed claim could not survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). The same standard applies when the plaintiffs seek to add a party under Fed. R. Civ. P. 21. *Johnson v. Bryson*, 851 F. Supp. 2d 688, 703 (S.D.N.Y. 2012); *Soler v. G & U, Inc.*, 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (When considering the addition of new parties under Rule 21, courts apply "'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'") (quoting *Fair Housing*

Brown as a defendant.

With respect to the existing defendants, Collette Fredericks and Kathy Lyndecker, plaintiffs have also failed to state any constitutional claim against them. Even assuming that either defendant was involved in the decision to hold or remove plaintiffs' son,[12] it is clear from the AC that plaintiffs were afforded notice and an opportunity to be heard regarding the "hold" that was placed on their son at the hospital. Plaintiffs state that they were still in the hospital when they received a telephone call to appear in court "in Forty Five minutes." (AC at 5). The plaintiffs clearly had several court appearances. Thus, they have stated no procedural due process violation as a result of the defendants' conduct.

With respect to substantive due process, the court notes that, although plaintiffs state that CPS "showed up to the hospital without a warrant to remove the child," no one removed the child from the hospital. The hospital put a "hold" on the baby to prevent plaintiffs from removing the child from the hospital until the court could intervene. It is clear that HCDSS "filed for an immediate removal" within approximately one day of the alleged "hold," and that the judge placed the baby in foster care with a family member. (AC at 5-6). "To state a claim for a violation of this

---

*Development Fund Corp. v. Burke*, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)). In this case, because Ms. Brown lacks personal involvement in plaintiffs' alleged constitutional violation, any amendment to add this defendant would be futile.

[12] It is unclear at what point either defendant was involved in plaintiffs' case. Plaintiffs allege that defendant Fredericks was their CPS "worker," and that one of the plaintiffs called her when they found out that their son was being "held" by the hospital, and the plaintiff asked why defendant Fredericks "lied" on the "report," and why she was attempting to destroy the family. The only facts alleged against defendant Lyndecker are that she was "unprofessional" and that she told AK that if she "put [JK] in jail," she would get her son back.

substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Trombly*, 929 F. Supp. 2d at 96 (quoting *McCall v. Ardsley Union Free School Dist.*, 514 F. App'x 1 (2d Cir. 2013) (citations omitted).

It has been held that brief separations of the parents from the child do not rise to the level of a substantive due process violation, "at least where the purpose of the removal is to keep the child safe during investigation and court confirmation of the basis for removal." *Nicholson v. Scoppetta*, 344 F.3d 154, 172 (2d Cir. 2003). In *Nicholson*, the court stated that, "the ex parte removal process is designed to safeguard the child until a court hearing is practicable, and judicial confirmation must be obtained 'forthwith.'" *Id,* (citing N.Y. Fam. Ct. Act §§ 1022, 1026(c)). The N.Y. Family Court Act provides that temporary removal may be appropriate where the parents are asked, but "refused to consent to the temporary removal of the child and [were] informed of an intent to apply for an order." N.Y. Fam. Ct. Act § 1022(a)(i)). The Family Court Act provides additional safeguards in such cases, including the requirement that the court provide immediate "calendering" of the proceeding. *Id.* § 1022(a)(ii) (the court must calender the proceeding "that day").

In this case, plaintiffs allege that they were given the opportunity to "sign over their rights," before any of the proceedings were initiated, but refused to do so. (AC at 4). The AC indicates that defendants properly followed the N.Y. Family Court Act in handling the matter. Both plaintiffs had notice of HCDSS's intention to initiate

proceedings for custody of the child. In this case, plaintiffs allege that AK was still in the hospital when the DSS was "called," when they were told of the court proceedings, and when a "hold" was placed on the baby. Plaintiffs complain that AK was still in the hospital when they got a call to be in court in 45 minutes, but this shows that the Family Court calendared the proceeding "immediately," and that the state law was being followed in plaintiffs' case. Plaintiffs were never actually "separated" from the baby, pending court intervention. Thus, plaintiffs do not state a substantive due process violation, and the AC may be dismissed as against defendants Fredericks and Lyndecker.

## VI. *Rooker-Feldman*

### A. Legal Standards

Challenges to state court decisions are barred by the *Rooker Feldman*[13] doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Id.* (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

Four requirements must be met before the court may apply the *Rooker Feldman* doctrine: (1) the federal court plaintiff must have lost in state court; (2) the plaintiff

---

[13] *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

must complain of injuries caused by the state court judgment; (3) the plaintiff must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the federal court proceeding. *James,* 2013 WL 1873276, at *2 (citing *Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (quoting *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005)). If these requirements are met, the federal court lacks jurisdiction even if the plaintiff alleges that the state court action was unconstitutional. *Id.* (citations omitted). The "fundamental" question is whether the injury alleged by the federal plaintiff "resulted from the state court judgment itself or is distinct from the judgment." *Id.* (citations omitted). If the federal constitutional claims are "inextricably intertwined" with the state court action, "then in essence the district court would be called on to review the state court decision." *Id.* However, if the plaintiff's claim raises an "independent claim" that is not the result of the state court judgment, but rather denies a conclusion reached by the state court, then federal court jurisdiction exists. *Id.*

    **B.**    **Application**

To the extent that plaintiffs are unhappy with the State Family Court's decision, that the defendants "lied" in their reports, or that plaintiffs are asking for the return of the baby, this court may not intervene. Plaintiffs state that they are "looking to get custody of our child . . . and money for the charges we have against [defendants]." (AC at 7). Plaintiffs state that they have had "many court appearances, . . . and are not getting any further." (*Id.*) A finding in plaintiffs' favor regarding the custody of their child would involve overturning the Family Court's decision that the plaintiffs are not

16

entitled to custody. This challenge would be contrary to *Rooker Feldman*, and may be dismissed.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiffs' letter-motion to amend to add Denise Brown as a defendant (Dkt. No. 8) is **DENIED**, and it is

**RECOMMENDED**, that the AC be **DISMISSED IN ITS ENTIRETY AS AGAINST ALL DEFENDANTS,** and it is

**ORDERED**, that the Clerk serve a copy of this Order on the pro se plaintiffs.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec. of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 6, 2017

Hon. Andrew T. Baxter
U.S. Magistrate Judge